IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

JOHNITA K. LEADINGHAM,

        Plaintiff,

V.                                          CIVIL ACTION NO. 3:08-0119

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

### FINDINGS AND RECOMMENDATION

In this action, filed under the provisions of 42 U.S.C. §1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying her application for supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed her application on November 16, 2004, alleging disability as a consequence of depression, anxiety and arthritis in her knees. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was thirty-five years of age and had obtained a GED. Her past relevant employment experience consisted of work as a cashier and greenhouse laborer. In his decision, the administrative law judge determined that plaintiff suffers

from "asthma, chronic low back pain, depression and anxiety," impairments which are severe. Though concluding that plaintiff was unable to perform her past work,[1] the administrative law judge found she had the residual functional capacity for a limited range of light level work. On the basis of this finding, and relying on Rule 202.20 of the medical-vocational guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. At the January 26, 2007 hearing, plaintiff testified that her most limiting problem is her "nerves." She also has back pain, leg pain and asthma. She indicated that she had no doctor at that time and was not taking prescribed medication because she did not have a medical card and could not afford to pay for treatment. She lost her medical card when she moved in with her mother.

The record reflects very little medical treatment, consistent with plaintiff's testimony. The Commissioner sent her to Joseph Koenigsmark, M.D. for a physical consultative examination on March 17, 2005. Her complaints included arthritis in the knees, breathing problems, depression and anxiety. Contrary to her hearing testimony, plaintiff identified the two physical problems as the cause of her inability to work. Exam revealed the right knee was "very stable" while the left knee did show some "minimal laxity." Plaintiff had full range of motion, a normal gait, full motor strength in the upper and lower extremities, was able to walk on her heels and toes and could do "complete" knee squats. An x-ray of the right knee was interpreted as showing good joint spacing and very little

---

[1] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2.

evidence of osteoarthritic change. Occasional lower field wheezes were heard in plaintiff's lungs, and a chest x-ray was consistent with "mild" abnormal findings; however, pulmonary function testing was considered "essentially normal" despite plaintiff giving a sub-maximal effort during testing. This examiner was of the opinion plaintiff had probable early osteoarthritis in both knees and possible early asthmatic symptoms related to shortness of breath with exertion. He added, however, that during the exam plaintiff had shown an ability to sit, stand and move around without difficulty and was able to get on and off the examining table without assistance. Her ability to lift, carry and move heavy objects "might" be "minimally" impaired, in his opinion, due to osteoarthritis changes and shortness of breath with exertion.

A state agency medical advisor, completing a residual functional capacity assessment shortly after this evaluation, was of the opinion that plaintiff could perform light level work which did not require any climbing of ladders, ropes or scaffolds and only occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching or crawling. Further, plaintiff should avoid all exposure to hazards as a result of headaches; even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc. due to mild COPD; and avoid concentrated exposure to extreme cold and vibration due to degenerative joint disease of the knees. At the end of the assessment, this physician made reference to an earlier administrative law judge decision from January 13, 2003 and noted findings therein of no exertional limitations but an environmental restriction on avoidance of heights and hazards. The reviewer noted plaintiff still needed to avoid heights and hazards, but her residual functional capacity was now reduced further because of degenerative joint disease of the knees.

Plaintiff sought treatment at an emergency room on April 15, 2005 for an increase of pain in her right leg. Exam showed full range of motion of the right knee and hip, and x-rays were

interpreted as normal. Plaintiff was seen several times at Tri-State Medical Center in September 2005 for right knee and hip pain and breathing problems. The few findings in the reports from this facility are difficult to read. She did receive physical therapy from December 12 to December 22, 2005 in an attempt to improve back and leg pain, however, she only attended three times and treatment was discontinued when she failed to return.

Mentally, plaintiff testified she had been treated at the Prestera Center, and there was reference to this in a report of consultative psychological evaluation with Robert Martin, M.A. on March 29, 2005. She indicated she had received medication only at Prestera, not psychotherapy, and had not had any mental health treatment for three years. She claimed to have panic attacks two to three times per month and indicated she avoids crowds and social situations. On exam, she appeared nervous and anxious but exhibited only mild impairment in social functioning. Also observed were a depressed mood, mildly restricted affect, normal immediate and remote memory, normal attention/concentration, persistence and pace, and moderate deficiency of recent memory. This evaluator diagnosed dysthymic disorder, panic disorder with agoraphobia and major depressive disorder, single episode, moderate severity.

The state agency psychologist who reviewed the evidence and completed a mental residual functional capacity assessment found moderate limitations in plaintiff's abilities to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along

with co-workers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting. She specifically noted the mental limitations found in the January 13, 2003 administrative law judge decision and indicated she had given them controlling weight and that they had been reflected in the moderate limitations she assessed. She summarized her findings by concluding that plaintiff "retains the ability to learn and perform simple, work-like activities, as identified by the ALJ [in the previous decision]."

The administrative law judge adopted residual functional capacity findings consistent with the opinions of both state agency medical advisors, and his findings are supported by substantial evidence. In her brief, plaintiff makes no objection to any particular finding and sets forth only one argument which is that the administrative law judge here did not perform the analysis required by Acquiescence Ruling (AR) 00-1(4) in this instance. This ruling, based on Fourth Circuit case law, requires that when adjudicating a subsequent claim, an administrative law judge must determine the weight to be given to prior findings by considering factors such as whether the facts which formed the basis of the earlier findings were subject to change as time passed; the likelihood of such a change, giving consideration to how much time has passed between the period previously adjudicated and the subsequent period; and the extent that evidence submitted with the later claim would cause a different finding to be made relative to the later-adjudicated period.

As the Commissioner notes, the cases upon which this Ruling is based involved instances where the findings in a subsequent claim were less restrictive than in the earlier claim. Clearly, the factors listed in the Ruling imply that it is only these types of situations which would require consideration of the factors listed. It is hard to imagine why a claimant would object, as plaintiff has in this case, to the administrative law judge finding her more limited in the later case.

5

Plaintiff has not specified what it is about the findings in the current case she finds objectionable and thus has provided no clues as to her motive here. As noted above, the state agency medical advisor who reviewed the evidence as to plaintiff's physical abilities indicated that the prior administrative law judge had found no exertional limitations, yet he, and the administrative law judge in the current case, found plaintiff limited to light level work. Additionally, the state agency medical advisor noted the prior administrative law judge found plaintiff needed to avoid heights and hazards, and these limitations were also assessed in the present case, but the state agency reviewer and administrative law judge went farther and found plaintiff could never climb ladders, ropes or scaffolds, be exposed to extreme cold, be subjected to concentrated vibration or work in moderate dust, gases, fumes, etc. Additionally, they found she could only occasionally climb stairs, balance, stoop, kneel, crouch or crawl, as noted. These limitations are unquestionably more favorable to plaintiff than those found in the earlier case.

Similarly, the state agency psychologist who reviewed the evidence noted the prior administrative law judge's findings with regard to mental functioning and specifically incorporated them into her own findings, with some differences in terminology. Indeed, it appears that the more recent findings actually reflect a greater level of restriction. The administrative law judge incorporated her summary conclusion into his findings, adding that plaintiff should have no significant public contact. Again, the court can see no reason why the same or possibly more restrictive mental residual functional capacity would require an explanation from the administrative law judge as anticipated in AR 00-1(4). As the Commissioner argued, to require an administrative law judge to discuss the less restrictive residual functional capacity findings from the earlier decision under the circumstances "would be an exercise in futility." The court concludes plaintiff's argument

6

is without merit, that the administrative law judge's findings in this case have substantial support in the record and the Court's decision should be affirmed.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted, and the decision of the Commissioner affirmed.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed. R. Civ. P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to all counsel of record.

       ENTER:  March 12, 2009

       _____
       MAURICE G. TAYLOR, JR.
       UNITED STATES MAGISTRATE JUDGE